ELIZABETH W. MURPHY, ADMINISTRATRIX v. CHARLES E. HARRIS ET AL.

[48 South. 232.]

EXECUTORS AND ADMINISTRATORS. *Chancery court. Chancellor. Attorneys' fees. Order for payment. Vacation. Code 1906, § 2131. Code 1906, § 507.*

Where an attorney at the employment of the administrator rendered services to the estate of a decedent by defending a suit against him:—

(a) An *ex parte* vacation order made by the chancellor, on petition therefor, requiring the administrator to pay his fee, is void; and

(b) Proceedings to enforce payment of the fee must be by inde-

pendent suit, notwithstanding Code 1906, § 2131, providing that in annual and final settlements administrators may be credited for such reasonable sums as they may have paid for the services of an attorney in the management or in behalf of the estate; and

(c) Code 1906, § 507, conferring power on chancellors to render decrees in vacation, does not authorize the grant in vacation, on an *ex parte* petition by the attorney, of a decree requiring the payment of such fee; and

(d) Efforts by an administrator to vacate a void order directing him to pay out funds belonging to the estate cannot give validity to such order.

FROM the chancery court of, second district, Tallahatchie county.

HON. PERCY BELL, Chancellor.

Harris and another, lawyers, appellees, were complainants or petitioners in the court below; Mrs. Murphy, administratrix of the estate of Smith Murphy, her deceased husband, was defendant there. The administratrix and several other persons had been sued by the county on a bond in the penalty of $1,000, on which the decedent was a surety, and in the suit, which was compromised for $750, an extravagant demand was made because of the alleged cutting of timber on a sixteenth section by the principal obligor on the bond. The appellees claimed that they had rendered services to appellant in defending the suit. From an *ex parte* order made by the chancellor in vacation at Clarksdale, Coahoma county, directing her to pay Harris and another, $800 as a solicitors' fee for services alleged to have been rendered the estate of the decedent, by them at her employment, in said case, and from a decree of the chancellor refusing to vacate such order as having been improvidently and wrongfully made the defendant appealed to the supreme court.

*A. H. Stephen* and *McWillie & Thompson,* for appellant.

The order making the $800 allowance was void because rendered in vacation and rendered by the chancellor outside of the county which had jurisdiction of the estate. Section 159 of the Constitution confers, not upon the chancellor, but upon the

chancery court, jurisdiction in "matters testamentary and of administration," and the validity of Code 1906, § 507, may be questioned. If, however, we treat the section as valid and as authorizing the chancellor to do in vacation everything in matters testamentary and of administration which the court could do in term time, still he is not authorized by the section or otherwise to render *ex parte* decisions.

If the chancellor can do in vacation what the court can do in term time, then he is the court and can render decrees only at the court house of the county, unless he have greater power than the court.

Again, the proceeding is wholly irregular and the decree should be reversed for another reason. Creditors of the estate whose claims have been probated and allowed may in certain instances sue an administrator in the chancery court and the suit is frequently an appendage to the record of the administration, the chancery court having jurisdiction since there is a trust on the estate of a decedent to pay the debts contracted by him in his life time. But for services rendered an administrator after the death of the decedent, although the service pertained to the administration of the estate, there is no such thing as a trust imposed upon the property of the decedent in the hands of the administrator. There is nothing which gives the chancery court jurisdiction peremptorily to order the payment of such claims where they are disputed. If an administrator were to make a report showing that he owed a debt to an officer of the court and that he had assets in his hands out of which it could be paid, there would be nothing perhaps improper in the court directing payment to be made. In a case like this where a controversy has arisen between an administrator and a person not a party to the administration proceedings touching services rendered by that person, surely the chancellor has nothing to do with it any more than this court has, unless there be some equitable feature in the case, and unless an independent original suit should be brought in that court.

The order allowing the $800 to the worthy appellees is void, certainly erroneous, in that it is a judgment in favor of two persons having no connection whatever with the administration of the estate of the decedent Murphy. The services rendered were not rendered in the matter of the administration of the estate but rendered in an independent suit brought against several persons as well as the administratrix. The proper administration of justice requires that strangers shall not be permitted to inject their suits into the records of other proceedings.

The court below erred in not vacating the order making the $800 allowance on the application of the appellant for such relief. It should have been vacated because it was void as above shown. Surely the court ought to have suspended its operation and have allowed a full, complete and perfect hearing by the court in term time after depositions duly taken and not have treated the matter in the summary way in which it was treated. It is no answer to an application for a formal and full hearing to say that the introduction of *ex parte* affidavits was allowed and such records as were at hand when considering the application were read in evidence.

This position is demonstrated to be true by the record now before the court. Take the affidavits and the record and it is impossible to say with any degree of certainty whether Cutrer was employed by Harris to aid him as an assistant attorney or whether he was employed by appellant, through Harris as her agent and representative. If the appellant did not authorize the employment of Cutrer then that gentleman must look to his employer Harris for compensation. Nor can the mind rest with any sort of certainty on a conclusion as to what would be a proper fee were Cutrer employed by Mrs. Murphy through Harris. The mere skeleton of the chancery court record taken in connection with all that is said in the affidavits gives us but scant data on which to base a conclusion touching a proper fee, although it shows the sum allowed to be excessive.

Harris in his affidavit tells us that Mrs. Murphy authorized

him to employ Cutrer and that she agreed to pay that gentleman whatever fee the chancellor would fix. If this be true it is not enforceable as an agreement to submit the matter to the chancellor as an arbitrator nor did it bind the administratrix in any event to an *ex parte* determination of the case by the chancellor. It will be noted, however, that Mrs. Murphy denies in her affidavit that she gave any such authority to Harris. This is a matter that ought not to have been so lightly treated on the hearing to set aside the order.

We are surprised that appellees take the position that an utterly void judgment can have life breathed into it by the court rendering it refusing to vacate it. This cannot be, and without such a predicate, the whole argument on the other side falls to the ground.

Think of a chancellor rendering an utterly void decree, the party against whom it was rendered applying for relief, thereby giving him an opportunity to correct his blunder, and think of the application being treated with contempt on the idea that *ex parte* decrees are lawful and final, and you have this case in mind. Now that an appeal is taken to this court from the void decree, the appellees assert that the utterly void decree was rendered valid by an effort to vacate it. This reasoning is unsound.

*Harris & Willing,* for appellees.

It will be borne in mind that the suit brought by the county against the estate of Murphy was brought before the same chancellor, and in the same court in which the estate was being administered; that after the proof had been taken, and the matter adjusted, Cutrer and Harris filed their petition and made application to the chancellor in vacation for the allowance of an attorney's fee, and the chancellor did allow an attorney's fee of eight hundred dollars, four hundred to Harris and four hundred to Cutrer.

We think there can be no question that the chancellor had the right to entertain this application and allow this fee in vacation,

under the broad powers given the chancellor by Code 1906, § 507; and we will not discuss this matter further than to refer the court to that section, which is very broad, and it was unquestionably a matter arising in the administration of the estate. The attorney's fee could have been allowed out of the assets of the estate in term time; therefore it could have been allowed in vacation, the chancellor being empowered to make in vacation all orders arising in the matters of administration, which he could make in term time.

The objection that this decree was made *ex parte* is without force, for while it is true that the chancellor did make an order upon an *ex parte* application, the administratrix filed her application to vacate this order, and proof was offered upon this application, and the proof submitted, and the chancellor refused to vacate the decree; so it can not be said that this was an *ex parte* proceeding, as the administratrix has had her day in court. At least, she has, so far as this transcript shows, been fully heard, and there is no sort of effort made to show that any additional proof bearing on the question could have been offered, or was to have been offered. The chancellor was fully conversant with all of the facts; he unquestionably had jurisdiction to proceed; and his decree in the matter is valid and should be sustained. This court cannot say that this fee is excessive. This court must accept the recitals in the decree as true in the absence of any showing to the contrary. *Wilson v. Brown,* 47 South. 545; *Bunckley v. Jones,* 79 Miss. 1, 29 South. 1000.

FLETCHER, J., delivered the opinion of the court.

The true view of this case is to be gathered from a consideration of the case of *Clopton v. Gholson,* 53 Miss. 466, and statutes enacted subsequent to this decision. In the *Clopton case,* which presents a careful review of the whole subject of attorney's fees incurred at the instance of the administrator and on behalf of the estate, it is stated that an administrator is ordinarily without power to impose upon the estate the primary ob-

ligation to pay such fees. That case holds that, when an attorney has been employed by a solvent resident administrator, the attorney must in the first instance look to the administrator personally for payment, and, if the claim is not voluntarily paid, must establish its validity by appropriate action against the administrator. Thereupon, after such voluntary payment or recovery as the case may be, the representative of the estate may apply to the court and receive credit for the payment. It is further shown that in certain cases, such as the insolvency or non-residence of the administrator, the attorney may look to the estate in the first instance upon the principle of subrogation; but in order to do so he assumes the burden of showing that payment cannot be enforced against the administrator personally. This being the attitude of the law as established by this decision the legislature, in 1882, enacted a statute which now appears as Code 1906, § 2131. This statute provides: "In annual and final settlements, the executor or administrator shall be entitled to credit for such reasonable sums as he may have paid for the services of an attorney in the management or in behalf of the estate if the court be of the opinion that the services were proper and rendered in good faith."

It is evident that this statute was intended to afford a ready method by which an administrator could, with the approval of the chancery court, employ and pay an attorney for services rendered on behalf of the estate without the necessity of resorting to a suit against the administrator to establish his claim. But it is clear that this statute has no reference to a claim contested by the administrator and which the attorney seeks to enforce over the administrator's protest. This statute has no effect to change or modify the rule laid down in the *Clopton case* in a case like this, where the administrator denies the contract and disputes the justice of the claim. When that state of case arises resort must be had to the general rule governing matters of this kind. Now it is perfectly obvious that, in the light of the holding in the *Clopton case,* appellees cannot enforce their claim

against the estate through the medium of an *ex parte* petition presented and heard in vacation. This is true entirely independently of the important fact that the petition as first presented was heard without any sort of notice to the administratrix. For the last-mentioned reason alone the first order would be void. But the infirmity lies deeper than the mere failure to notify the administratrix. No such demand as this can be enforced otherwise than by a suit, either at law or in equity, instituted and conducted precisely as other causes are conducted. This is not such a matter in connection with the administration of an estate which the chancellor may hear and determine in vacation under Code 1906, § 507. For this reason the original proceeding was misconceived, and it was not helped by the fact that the administratrix filed a petition to have the former void order set aside, even though notice of the pendency of this latter petition was given and affidavits read on the hearing. Causes in equity cannot be heard on *ex parte* affidavits. The trouble is that appellees proceeded upon the erroneous theory that the relief they sought could be granted as an incident to and in connection with the administration of the estate.

The decrees appealed from are reversed, the order allowing the attorney's fee is vacated, and the original petition dismissed, without prejudice to the right of appellees to institute such proper action as they may be advised.

*Reversed.*